Argued and submitted January 20, Court of Appeals affirmed, trial court reversed and remanded to trial court for further proceedings September 15, 1987

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## MARK WESLEY BOYANOVSKY,
*Respondent on Review.*

(TC TM84-3967; CA A39414; SC S33380)

743 P2d 711

Dave Frohnmayer, Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Virginia L. Linder, Solicitor General, and David Schuman, Assistant Attorney General, Salem. Also on the memorandum in response to court questions was Richard D. Wasserman, Assistant Attorney General, Salem.

Kathryn A. Wood, Corvallis, filed a memorandum in

response to court questions and argued the cause for respondent on review.

*CARSON, J.*

Gillette, J., specially concurred and filed an opinion in which Jones, J., joined.

Peterson, C. J., dissented and filed an opinion in which Campbell, J., joined.

## CARSON, J.

This case involves the legality of a sobriety roadblock conducted to discover and arrest persons committing the crime of driving while under the influence of intoxicants and to gather evidence for use in the criminal prosecutions.

From approximately 11:00 p.m. to 2:20 a.m., on September 28-29, 1984, the Oregon State Police, in conjunction with the Benton County Sheriff's Office and the Philomath Police Department, conducted a roadblock on Highway 20 near the Philomath city limits. Its primary purpose was to detect those persons driving under the influence of intoxicants. Secondarily, it was intended to check driver licenses and vehicle registrations.

Defendant was stopped and arrested for driving under the influence of intoxicants. ORS 487.540, since renumbered as 813.010. He challenged the legality of the roadblock on statutory and constitutional grounds. He argued that the roadblock was unlawful because it took place without statutory authority or agency rules allowing and controlling such a procedure. There was testimony that the Oregon State Police have published regulations governing roadblocks, but none were offered in evidence. The trial court did not consider these.

The trial court nonetheless found that the search and seizure did not violate the state or federal constitutions. The judge "balanced" the public need for sobriety roadblocks against the individual's interest in privacy to reach this conclusion. Although the trial court expressed "extreme reluctance" in reaching its decision, it reasoned that this analysis and conclusion was compelled by *State v. Tourtillott,* 289 Or 845, 618 P2d 423 (1980). The Court of Appeals reversed *per curiam,* relying on its decision in *Nelson v. Lane County,* 79 Or App 753, 720 P2d 1291 (1986), *aff'd* 304 Or 97, 743 P2d 692 (1987).

In *Nelson v. Lane County,* we recounted this court's development, since *State v. Tourtillott, supra,* of an examination of sources of authority before reaching the question whether a challenged police procedure is constitutional. We suggested that some "searches" and "seizures," conducted for

reasons other than the enforcement of laws by means of criminal sanctions, may be authorized by the responsible law-makers and carried out pursuant to administrative regulations without the customary advance judicial authorization of a warrant.

This roadblock, however, like the roadblock held unconstitutional in *State v. Anderson,* 304 Or 139, 743 P2d 715 (1987), was used to gather evidence for defendant's criminal prosecution. Before government officials can embark on a search or seizure for evidence to be used for this purpose, they must have individualized suspicion of wrongdoing. Further, unless they can show to a court's satisfaction, after the fact, that they did not have time to obtain a warrant, the authorities must have judicial authorization, in the form of a warrant, before the search or seizure.

Defendant was seized when his vehicle was stopped. His vehicle is, like other possessions, an "effect" in which he is entitled to be "secure * * * against unreasonable search, or seizure." Or Const, Art I, § 9. His person and documents were searched and the evidence obtained was used to convict him of a crime. These acts occurred in the absence of any belief that he had committed an offense. The officers did not comply with the constitutional standards for searches and seizures. Or Const, Art I, § 9. The evidence must be suppressed.

The decision of the Court of Appeals is affirmed. The decision of the trial court is reversed. The case is remanded to the trial court for further proceedings in accordance with this opinion.

**GILLETTE, J.,** specially concurring.

I concur in the disposition of this case made by the lead opinion. I cannot, however, accept the reasoning of that opinion.[1] I therefore write separately.

The key to the lead opinion is this paragraph from *Nelson v. Lane County,* 304 Or 97, 103, 743 P2d 692 (1987):

---

[1] Of course, the reasoning of that opinion actually appears in the lead opinion in *Nelson v. Lane County,* 304 Or 97, 743 P2d 692 (1987), under the heading "I. Legality of Roadblocks Under State Law," at 101-106. I cannot participate in *Nelson,* because I was a member of the Court of Appeals panel that originally decided that case. It is for this reason that my views are published in the present case, rather than in this court's decision in *Nelson.*

"[S]ome procedures may invade the personal freedoms protected from government interference by the [Oregon] constitution. Roadblocks are seizures of the person, possibly to be followed by a search of the person or the person's effects. *For this reason, the authority to conduct roadblocks cannot be implied.* Before they search or seize, executive agencies must have explicit authority from outside the executive branch." (Emphasis supplied.)

The balance of the lead opinion is devoted to development of this idea, which I shall call the "administrative search model." The trouble is, none of the cases decided by the court today are administrative search cases, and the model — even if it were correct — is inapposite.

In all three of these cases, the roadblocks were being conducted by police officers to satisfy four objectives: (1) to apprehend persons driving under the influence of intoxicants; (2) to deter persons from driving under the influence; (3) to promote personal safety of travelers on the highways, including the offender; and (4) to educate the public about the dangers of driving while under the influence of alcohol or drugs. If a stopped driver was found to be under the influence of alcohol or drugs, the driver was to be arrested and prosecuted. These were not administrative searches, calling for this court to begin to fashion a jurisprudence under Article I, section 9, of the Oregon Constitution, like that the United States Supreme Court has developed under the Fourth Amendment for administrative searches. *See Donovan v. Dewey,* 452 US 594, 101 S Ct 2534, 69 L Ed 2d 262 (1981); *Marshall v. Barlow's, Inc.,* 436 US 307, 98 S Ct 1816, 56 L Ed 2d 305 (1978); *United States v. Biswell,* 406 US 311, 92 S Ct 1593, 32 L Ed 2d 87 (1972); *Colonnade Corp. v. United States,* 397 US 72, 90 S Ct 774, 25 L Ed 2d 60 (1970); *Camara v. Municipal Court,* 387 US 523, 87 S Ct 1727, 18 L Ed 2d 930 (1967); *See v. City of Seattle,* 387 US 541, 87 S Ct 1737, 18 L Ed 2d 943 (1967); *see also United States v. Martinez-Fuerte,* 428 US 543, 96 S Ct 3074, 49 L Ed 2d 1116 (1976); *United States v. Brignoni-Ponce,* 422 US 873, 95 S Ct 2574, 45 L Ed 2d 607 (1975).

Applying traditional criminal law concepts, I perceive two bases — one statutory, the other constitutional — under which the Court of Appeals should be affirmed.

## 1. *The Search was Unlawful under Pertinent Statutes*

As noted, one of the objectives of the roadblock stops in this case was to identify and to cause the arrest and prosecution of DUII offenders. Normally, stops of persons suspected of crime are governed by ORS 131.615, which provides:

"(1)  A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry.

"(2)  The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3)  The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

However clearly its language might appear to me to solve the question now before us, this court has interpreted ORS 131.615 not to be applicable to roadblocks for criminal violations. In *State v. Tourtillott,* 289 Or 845, 618 P2d 423 (1980), this court was called upon to determine whether ORS 131.615 applied to so-called "game checkpoint stops." This court held that it did not apply, explaining,

"[T]he language of ORS 131.615 limits its application to investigations of crime where reasonable suspicion of criminal activity has focused upon a particular individual. *Checkpoint stops, or any other stop where there is no individualized suspicion of criminal activity, do not fall within this language.*" 289 Or at 853 (emphasis supplied).

Arguably, this statement in *Tourtillott* was too broad. It is certainly true that there are circumstances in which an officer may stop a car without individualized suspicion. For example, as suggested in *Tourtillott* itself,

"[an officer] may stop a motorist to warn of a washout ahead and learn, by looking into the car, of evidence leading to the arrest of the driver or an occupant * * *." *Id.*

Or, as Attorney General Frohnmayer argued in the present cases:

"[I]n police work every day there are benign stops, where there is a police officer telling a person that a dog has jumped out of the back of his pickup at the last intersection, to a

police officer stopping because there is a wreck ahead, hazardous spills on the highway, escaped fugitives, hostages or kidnap victims."

But what of circumstances in which the officer stops the car precisely because he hopes to find evidence of a crime? If writing on a clean slate, I would think ORS 131.615 applies to all such cases. The existence of individualized suspicion thus becomes a part of the analysis *under* the statute, not the basis on which the statute is either applied or ignored. But *stare decisis* prevents our modifying the language in *Tourtillott* construing ORS 131.615. The legislature has seen fit not to change its statutory restrictions on this kind of police conduct in three legislative sessions since *Tourtillott* was decided. It has the power to do so. As presently written, ORS 131.615 does not render these roadblocks illegal.

## 2. *The Search was Unlawful under the Oregon Constitution*

Because the foregoing statutory analysis does not render roadblocks illegal *per se,* I address the constitutional question.

The state argues that the constitutional permissibility of roadblock stops was established in *State v. Tourtillott, supra,* 289 Or at 853-59. I disagree. As recognized by the lead opinion, *Tourtillott* is not really a case decided under the Oregon Constitution. While it mentions Oregon Constitution Article I, section 9, its analysis is conducted entirely in Fourth Amendment terms. This court began to back away from *Tourtillott* in *State v. Caraher,* 293 Or 741, 748-49 n 7, 653 P2d 942 (1982), the lead opinion is equally chary concerning it, 304 Or at 100-101, and I join in the retreat. The Oregon constitutional issue is an open one.

While open, the issue is not difficult. Warrantless searches and seizures are *per se* unreasonable, subject to certain well-recognized exceptions. *State v. Miller,* 300 Or 203, 225, 709 P2d 225 (1985). None of those exceptions apply here. What has occurred is, quite simply, the seizure of a car and its driver without any probable cause in the hope that, sometime during the ensuing detention, evidence of a crime will be discovered. If Article I, section 9, stands for *any* proposition, it surely stands for the proposition that such police activity is

unconstitutional. I would affirm the Court of Appeals on this basis.[2]

Jones, J., joins in this specially concurring opinion.

**PETERSON, C. J.,** dissenting.

I dissent for the reasons set forth in my dissenting opinion in *Nelson v. Lane County,* 304 Or 97, 743 P2d 692 (1987).

Campbell, J. joins in this dissent.

---

[2] Why those who join in the lead opinion in *Nelson* do not, instead, join in this opinion so that the clear majority view of this court on this issue could end the debate is beyond me.