Argued and submitted July 15, 1988, reversed and remanded May 17, reconsideration denied July 14, petition for review allowed August 29, 1989 (308 Or 315)

STATE OF OREGON,
*Appellant,*

*v.*

JAMES WILLIAM GERRISH,
*Respondent.*

(CR8702424; CA A46559)

773 P2d 793

Rives Kistler, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Craig D. White, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

DEITS, J.

Richardson, P. J., concurring.

Joseph, C. J., dissenting.

## DEITS, J.

The state appeals the trial court's grant of defendant's pre-trial motion to suppress evidence obtained during a police roadblock. The issue is whether an emergency roadblock set up to apprehend a fleeing felon violated defendant's rights under the state and federal constitutions. We hold that, under the circumstances of this case, it did not. Accordingly, we reverse.

On September 6, 1987, at 10:10 p.m., an armed robbery and shooting occurred in front of the Salishan Lodge in Gleneden Beach. State Police Officer Geistwhite received a radio dispatch stating that the suspect was a male and that he had fled on foot. No further description of the suspect was given at that time.[1] Geistwhite proceeded on Highway 101 and arrived at the private road leading to the lodge at 10:18 p.m. That road is approximately one-quarter mile long and is the only road exiting the lodge. Geistwhite activated the overhead lights on his patrol car and parked the car across the entrance to the road. He testified that he intended to stop each vehicle leaving the lodge.[2]

Defendant was driving the first vehicle to arrive at Geistwhite's roadblock. He did not stop, but drove around the patrol car and proceeded down the road. Geistwhite ran after him and ordered him to stop, which he did. He asked defendant and his passenger whether they knew anything about the robbery. As defendant responded, Geistwhite noticed the strong odor of alcohol and observed that his face was flush, his eyes were bloodshot and his speech slurred. He subsequently was arrested for driving under the influence of intoxicants. ORS 813.010.

Defendant filed a pre-trial motion to suppress all evidence obtained as a result of the stop, arguing that the roadblock was an unlawful search and seizure under Article I, section 9, and the Fourth Amendment. The trial court granted the motion on the ground that the roadblock violated Article I, section 9, as interpreted by the Supreme Court in *Nelson v.*

---

[1] Geistwhite testified that he received a more complete description of the suspect either en route to the lodge or shortly after arriving there.

[2] Geistwhite testified that he eventually stopped approximately 15 automobiles.

*Lane County*, 304 Or 97, 743 P2d 692 (1987); *State v. Boyanovsky*, 304 Or 131, 743 P2d 711 (1987); and *State v. Anderson*, 304 Or 139, 743 P2d 715 (1987). The state appeals.

■    We first consider whether the stop was authorized by statute. *See Nelson v. Lane County, supra*, 304 Or at 102 n 2. ORS 181.030 charges the Oregon State Police with the duty of enforcing the criminal laws and authorizes officers to "pursue and apprehend offenders and obtain legal evidence necessary to insure the conviction in the courts of such offenders." Geistwhite testified that his primary purpose in setting up the roadblock was to apprehend the suspect and that his secondary purpose was to speak with each driver to determine whether they had witnessed the shooting or robbery. Accordingly, the roadblock in this case clearly was designed to accomplish the broad purposes of ORS 181.030.[3]

■    The more difficult and crucial question is whether the procedures used pursuant to the statute "invade the freedoms protected from government interference by the constitution." *Nelson v. Lane County, supra*, 304 Or at 103. We begin by analyzing defendant's rights under the Oregon Constitution. *State v. Kennedy*, 295 Or 260, 262-65, 666 P2d 1316 (1983). In *State v. Boyanovsky, supra*, the Supreme Court considered the legality of a general police roadblock designed primarily to detect those persons driving under the influence of intoxicants and secondarily to check driver licenses and vehicle registrations. The defendant in *Boyanovsky* was stopped at the roadblock and charged with driving under the influence. In a plurality opinion, the Supreme Court determined that the roadblock violated the defendant's rights under Article I, section 9. The court stated:

> "Before government officials can embark on a search or seizure for evidence to be used [for the defendant's criminal prosecution], they must have individualized suspicion of

---

[3] We note that the court in *Nelson* held that the roadblock in that case was not authorized by ORS 181.030, because "[t]hat statute sets forth only the general criminal law enforcement duties of the Oregon State Police." 304 Or at 106. The court held that authority to conduct a roadblock for the purposes of detecting intoxicated drivers could not be inferred from such a broad statute. We also note, however, that *Nelson* drew a distinction between the "administrative search" in that case and other "searches or seizures intended to discover evidence of crime." 304 Or at 104. The latter may be supported by ORS 181.030 and "[c]ompliance with the warrant clause, or its few exceptions as this court has interpreted them." 304 Or at 104.

wrongdoing. Further, unless they can show to a court's satisfaction, after the fact, that they did not have time to obtain a warrant, the authorities must have judicial authorization, in the form of a warrant, before the search or seizure." 304 Or at 134.

In this case, the trial judge determined that the second prong of *Boyanovsky* was satisfied in that the exigent circumstances created by the robbery and shooting prevented the police from obtaining a search warrant before setting up the roadblock. We agree with that determination. However, the trial judge went on to hold that the roadblock was, nevertheless, unconstitutional, because Geistwhite had no individualized suspicion that defendant had engaged in wrongdoing, as is required under the first prong of *Boyanovsky*.

This case, however, is distinguishable from *Nelson, Boyanovsky* and *Anderson.* In those cases, the police had no knowledge that a crime had been committed and no reason whatsoever to believe that the individuals who were stopped had been involved in any criminal activity. As described by Gillette, J., in his special concurrence in *Boyanovsky,* "[w]hat has occurred is, quite simply, the seizure of a car and its driver without any probable cause in the hope that, sometime during the ensuing detention, evidence of a crime will be discovered." 304 Or at 137 (Gillette, J., concurring).

In this case, the police not only knew that a crime had been committed, they knew it had occurred only minutes before and that there was only one roadway exit from the scene of the crime. Defendant argues that, because eight minutes had elapsed since the shooting and because the suspect was not seen getting into a car, it was not reasonable for the police to believe that the suspect would be coming through the roadblock. We disagree. It was reasonable for Geistwhite to believe that the suspect would still be at or near the scene of the crime after eight minutes. Further, the fact that the suspect was seen running into the parking lot, although he was not seen getting into a car, does not necessarily make it unreasonable to believe that he would attempt to escape by car. For example, it would have been reasonable under the circumstances of this case to believe that the suspect had parked a car somewhere on the edge of the lot or that he would attempt to

steal a car or even that he would attempt to force someone else to drive him away. In summary, the proximity in time between the commission of the crime and the officer's arrival at the entrance to the road, the likelihood that the suspect would attempt to flee the area by car and the officer's knowledge of the uniquely limited access to the lodge, all combined to give the police reasonable suspicion to believe that one of the cars passing through the roadblock would contain the suspect.[4] *See State v. Teal,* 94 Or App 381, 765 P2d 827 (1988). Accordingly, we conclude that defendant's rights under Article I, section 9, were not violated.

■       Unlike our analysis under the Oregon Constitution, in analyzing the constitutionality of a roadblock under the Fourth Amendment we balance "its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse,* 440 US 648, 653-654, 99 S Ct 1391, 59 L Ed 660 (1979); *see State v. Tourtillott, supra* n 4. We conclude that the government's interest in apprehending a fleeing felon in this case outweighed the minimal intrusion on the Fourth Amendment rights of those stopped for brief questioning and visual inspection of their automobiles. *See State v. Tourtillott, supra* n 4, 289 Or at 859. Accordingly, we hold that defendant's Fourth Amendment rights were not violated.

Reversed and remanded.

**RICHARDSON, P. J.,** concurring.

Because we call the officer's activities in this case a "roadblock," we are doomed to analyze it in terms of the cases about roadblocks. Those cases all deal with seizures of automobiles and the drivers where ORS 131.615 is not implicated. *State v. Anderson,* 304 Or 139, 743 P2d 715 (1987); *State v.*

---

[4] Although we believe the "individualized suspicion" standard articulated in *State v. Boyanovsky, supra,* was met in this case, we do not believe that the Supreme Court contemplated the sort of "roadblock" erected in this case when it coined the phrase "individualized suspicion of wrongdoing." Rather, we believe that it intended to place that limitation only on roadblocks erected *without any pre-existing suspicion of any criminal activity whatsoever, i.e.,* sobriety checkpoints. The phrase "individualized suspicion of wrongdoing" appears to have stemmed from an analysis of ORS 131.615 contained in *State v. Tourtillott,* 289 Or 845, 618 P2d 423 (1980), which involved "game checkpoint stops." The checkpoints in *Tourtillott* were similar to the roadblocks in *Boyanovsky* and *Anderson* in that the police had no pre-existing reasonable suspicion to believe that *any* of the persons stopped had engaged in criminal activity.

*Boyanovsky,* 304 Or 131, 743 P2d 711 (1987); *Nelson v. Lane County,* 304 Or 97, 743 P2d 692 (1987); *State v. Tourtillott,* 289 Or 845, 618 P2d 423 (1980), *cert den* 451 US 972 (1981). They also deal with police activity of stopping vehicles to see what the drivers or passengers are doing at that moment with a purpose to prosecute any criminal activity discovered. In *Nelson,* the court suggested that seizure of persons at a roadblock for a purpose other than enforcement *of a law* by means of criminal sanctions could be constitutional and that the inquiry was whether the activity was specifically authorized. In *Boyanovsky,* the court held that the roadblock was used by the police to gather evidence for criminal prosecution of the driver and, because it was set up with no individualized suspicion of wrongdoing, it violated Article 1, section 9, and the evidence obtained had to be suppressed.

In each case, whether the stop was for criminal or non-criminal purposes, the physical activity of the police is identical: a vehicle and its occupants are seized. The purpose, rather than the action or result, is of paramount significance.

In this case, the purpose of the officer's physical act of stopping all vehicles was two-fold: first, to see if any of the vehicles contained the assailant; and second, to ask occupants of the vehicles if they had any information regarding the robbery and shooting. The stop of the vehicles was not in the nature of a roadblock in the same sense as the stops and seizures involved in *Anderson, Boyanovsky* and *Nelson.* The officer here was not stopping each car to see what activity the occupants may be involved in either for criminal law enforcement or for some administrative purpose. He knew that a robbery and shooting had occurred about eight minutes earlier, and he had a reasonable basis in fact to conclude that the assailant was still at the lodge and would leave in a vehicle by the exit road. In other words, he had a reasonable suspicion, sufficient to satisfy ORS 131.615, that one of a relatively small group of cars located in a particularly defined area would contain a fleeing felon.

There may have been alternative reasonable conclusions from the information that the officer had: for example, that the robber had fled on foot or had simply hidden in the

lodge. But the fact that there might be other reasonable suspicions or explanations does not foreclose the officer's proceeding on the particular suspicion he had. *See State v. Villagran,* 294 Or 404, 657 P2d 1223 (1983).

An equally valid basis for the stop was so that the officer could interview potential witnesses to the crime. That basis did not focus on the driver for the purpose of seeing if he was violating the law and hence to exact criminal penalties for enforcement. It focused on the individual driver as a source of information with no intented consequences in the nature of criminal penalties. The stop had a purpose of getting information, not finding offenders to punish. The stop of defendant was lawful in order to get information from him as a witness. The officer saw that defendant was intoxicated. That evidence, in plain view, was observed by the officer from a lawful vantage point.

The justification for the compelled stop is two-fold. Under ORS 131.615, the officer had a reasonable suspicion that a vehicle stopped would contain a fleeing felon. Secondly, although the stop was police activity in investigating a crime, the investigation was not directed at the drivers or occupants of the cars who were simply potential witnesses. The fact that defendant was intoxicated was discovered after a lawful stop and is not subject to suppression.

**JOSEPH, C. J.,** dissenting.

The Supreme Court's teaching in *Nelson v. Lane County,* 304 Or 97, 743 P2d 692 (1987), *State v. Boyanovsky,* 304 Or 131, 743 P2d 711 (1987), and *State v. Anderson,* 304 Or 139, 743 P2d 715 (1987), is simple: ORS 181.030 can *never* support an implication of authority for police to conduct roadblocks. In the absence of a statute or an ordinance establishing an administrative scheme for a particular roadblock, there is no authority for the police to conduct one. Otherwise, "[b]efore government officials can embark on a search or seizure for evidence to be used [for the enforcement of laws by criminal sanctions], they must have individualized suspicion of wrongdoing." *State v. Boyanovsky, supra,* 304 Or at 134.

Under that case law, the roadblock conducted here, whatever its political merits, was plainly, patently and

unavoidably in violation of Article I, section 9. The lead opinion attempts an end run around those cases and, while tripping over its own feet, runs head on into the case law and the Oregon Constitution—and then moves on as if nothing had happened. The lead opinion's disingenuous footnote 3, which would make *Nelson v. Lane County, supra,* say the exact opposite of what it says, is matched only by its footnote 4, which demonstrates that the author either has not carefully read or, more likely, just does not like *Nelson v. Lane County, supra, State v. Boyanovsky, supra,* and *State v. Anderson, supra.* To find "individualized suspicion of wrongdoing" in the facts of this case is incredible in every sense of the word.

The concurrence, while avoiding none of the lead opinion's errors, takes fanciful wing and tries to turn this roadblock, at which every car was to be stopped in an effort to catch a robber, into something *perhaps* legally different but certainly not what it really was, that is, a roadblock not authorized by the law or the facts.

I dissent.