Argued and submitted November 1, 1989, the decision of the Court of Appeals
affirmed, the decision of the district court reversed and remanded to district court for
further proceedings July 25, 1991

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## JAMES WILLIAM GERRISH,
*Petitioner on Review.*

(TC No. CR8702424; CA A46559; SC S36266)

815 P2d 1244

Craig D. White, Portland, filed the petition and argued the cause for petitioner on review.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent on review.

Before Peterson, Chief Justice, and Linde,** Carson, Jones,*** Gillette, Van Hoomissen, and Fadeley, Justices.

CARSON, J.

---

** Linde, J., retired January 31, 1990.

*** Jones, J., resigned April 30, 1990.

## CARSON, J.

The specific procedural issue in this criminal case is whether the trial court should have granted defendant's motion to suppress evidence obtained following an investigatory inquiry of a potential witness to a felony. The broader legal issue is whether the police officer's actions violated defendant's constitutional rights.

After being stopped by an Oregon State Police officer investigating a robbery and shooting, defendant was arrested and charged with driving under the influence of intoxicants. ORS 813.010. Defendant filed a pretrial motion to suppress, arguing that the evidence of his intoxication was obtained as the result of the officer's unlawful seizure of his person and subsequent search. The trial court granted defendant's motion, suppressing the evidence of intoxication obtained following the stop.

The state appealed the trial court's ruling, and the Court of Appeals reversed, holding that the evidence should have been admitted. *State v. Gerrish*, 96 Or App 582, 773 P2d 793 (1989). We allowed review to determine whether the officer's actions in stopping defendant violated defendant's state and federal constitutional rights. We conclude that defendant's rights were not violated. We affirm the Court of Appeals' decision, although on somewhat different grounds.

### FACTS

After a pretrial suppression hearing, the trial court made the following findings of fact:

"On July 6, 1987, at 10:10 p.m., an armed robbery and shooting occurred at the Salishan Lodge in Gleneden Beach, Oregon. [An] Oregon State Police [officer] responded to the call. Upon his arrival at Salishan at 10:18 p.m., [the officer] took up a position at the only roadway exiting the lodge area for the express purpose of speaking with all persons leaving by vehicle to determine whether any of these persons witnessed the shooting/robbery, or to possibly find the perpetrator.

"The only information made available to [the officer] regarding the incident at that time was to the effect that a man and a woman had been accosted, that the male victim was shot, and that the suspect was a male and left on foot.

"The evidence reveals that [the officer] had his overhead lights on, and that the first car down the hill did not initially stop and in fact drove right by [the officer], whereupon [the officer] commanded the defendant to stop, which he did. [The officer] asked the defendant and his passenger if they knew anything about the robbery, then made his initial observation as to defendant's lack of sobriety. [The officer] told the defendant to remain where he was at, another officer was called, and the [first officer] returned to his initial position of checking cars coming from Salishan. As far as the defendant is concerned, field sobriety tests were performed by [another officer], and the defendant [was] arrested for Driving Under the Influence of Intoxicants.

"[The first officer] testified that he spoke with people in about fifteen different cars during this aspect of the robbery investigation."

## ANALYSIS

The issue in this case is whether the Oregon State Police officer, in stopping defendant in the course of his criminal investigation, violated defendant's constitutional rights, thereby requiring suppression of evidence derived therefrom.[1] We address the issue first under the Oregon Constitution and then under the federal constitution.

---

[1] We note initially that we do not consider this case to be of the same ilk as the "roadblock" cases of *State v. Boyanovsky,* 304 Or 131, 743 P2d 711 (1987); *State v. Anderson,* 304 Or 139, 743 P2d 715 (1987); and *Nelson v. Lane County,* 304 Or 97, 743 P2d 692 (1987). In this case, the police officer was attempting to communicate with witnesses to a specific recent crime or possibly to apprehend the criminal. Unlike those cases, there is no issue regarding the officer's authority to conduct a criminal investigation. ORS 181.030, which charges members of the Oregon State Police with the enforcement of all criminal laws, specifically directs Oregon State Police officers to "[p]ursue and apprehend offenders and *obtain legal evidence* necessary to insure the conviction in the courts of such offenders." (Emphasis added.)

Further, the purpose and function of the roadblocks in the roadblock cases contrast sharply with those in the present case:

"In all three of these cases, the roadblocks were being conducted by police officers to satisfy four objectives: (1) to apprehend persons driving under the influence of intoxicants; (2) to deter persons from driving under the influence; (3) to promote personal safety of travelers on the highways, including the offender; and (4) to educate the public about the dangers of driving while under the influence of alcohol or drugs." *State v. Boyanovsky, supra,* 304 Or at 135 (Gillette, J., specially concurring).

*Oregon Constitutional Analysis*

■■    Article I, section 9, of the Oregon Constitution prohibits police officers from conducting unreasonable searches and seizures. However, this prohibition does not apply to actions of police officers that, because of their low level of intrusiveness, do not constitute searches or seizures. Thus, the first issue in any Article I, section 9, seizure analysis is whether the conduct of the police officer constitutes a "seizure" in the constitutional sense. *Cf. State v. Ainsworth,* 310 Or 613, 616, 801 P2d 749 (1990) ("the threshold question in any Article I, section 9, search analysis is whether the police conduct at issue is sufficiently intrusive to be classified as a search"). In this case, we begin by determining whether the officer's directive that defendant stop his automobile was a seizure of defendant.

■    In *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978), this court recognized that there are varying levels of official interference with a citizen's liberty, each of which requires a different level of justification:

> "In descending order of justification, they are: (1) arrest, justified only by probable cause; (2) temporary restraint of the citizen's liberty (a 'stop'), justified by reasonable suspicion (or reliable indicia) of the citizen's criminal activity; and (3) questioning without any restraint of liberty (mere conversation), requiring no justification." (Footnote omitted.)

Only encounters of the first two kinds are "seizures" for purposes of Article I, section 9. *See State v. Kennedy,* 290 Or 493, 498, 624 P2d 99 (1981) ("It is clear * * * that a police officer may approach a citizen, identify himself as an officer and ask some preliminary questions without making a 'stop.' "). The three categories identified in *Warner* represent a simplification of what actually is a continuum of intrusiveness. "The three categories are guidelines only. They are neither exhaustive nor conclusive as to what police action is a 'seizure' of a person." *State v. Holmes,* 311 Or 400, 407, 813 P2d 28 (1991). Our cases, however, do provide some guidance regarding what degree of intrusiveness is required for a police officer-citizen encounter to amount to a seizure of the citizen.

Most recently, in *State v. Holmes, supra,* we have synthesized the holdings in our cases to provide the following test of whether a person has been seized for Article I, section 9, purposes:

"[A] 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances." 311 Or at 409. (Footnote omitted.)

*Holmes* provides additional guidance in determining when a police officer-citizen encounter constitutes a seizure: (1) the determination is a "fact-specific inquiry into the totality of the circumstances of the particular case"; (2) the pivotal factor in deciding whether any interference with the citizen's liberty is "significant" is "whether the officer, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner that would be perceived as a nonoffensive contact if it had occurred between two ordinary citizens." *State v. Holmes, supra,* 311 Or at 408-10.

In *Holmes,* we examined the constitutional ramifications of a police officer-citizen encounter in a situation similar to the one at hand. In that case, Deputy Sheriff Achziger was assisting in the investigation of a fatal motor vehicle accident. He was rerouting traffic around the accident scene, stopping each vehicle and explaining the situation.

"When defendant's automobile neared him, Achziger pointed a flashlight beam at the vehicle and motioned with his free hand for defendant to stop. Instead of stopping his car where Achziger stood, as the previous motorists had done, defendant drove past Achziger and stopped about two or three feet beyond him. As Achziger took a step toward defendant's automobile, it rolled another two or three feet from him and then stopped. At that time, Achziger had no reason to suspect that defendant had violated any law and had observed no other unusual driving." *Id.* at 403.

When Achziger spoke with Holmes, he detected a strong odor of alcohol on his breath and this, together with other indicia of inebriation, resulted in Holmes being arrested for driving under the influence of intoxicants, of which he was later

convicted. Holmes, like defendant in this case, challenged the use of evidence obtained following the stop. After determining that Achziger was authorized by statute to stop Holmes and to advise him of the accident ahead and the need to detour, we addressed the issue of whether Achziger's actions violated Holmes' state constitutional rights, also discussing several of our past cases.

In *Holmes,* we applied the test set out above and concluded that Achziger's initial encounter with Holmes was not a seizure under the Oregon Constitution. Our conclusion was supported by the following factors: (1) seeing an officer directing or stopping traffic because of a motor vehicle accident is a common experience, so Achziger's actions did not create a ''psychologically intimidating environment''; (2) Achziger did not question Holmes, request any identification, make any threats, or draw a weapon; and (3) a reasonable motorist, although possibly annoyed, would not believe that the officer's conduct significantly restricted, interfered with, or otherwise deprived the motorist of her liberty or freedom of movement.

This case does not differ in any legally significant way from *Holmes.* To begin with, the factual contexts are similar: In both cases, the officer was acting in accordance with his statutory duties. In both cases, the officer, by the use of his overhead lights and similar means, was signalling the defendant to stop. In each case, the compliance was not immediate. In each case, the officer intended to stop the defendant only long enough for an exchange of information.[2] In neither case did the officer have any reason to believe that the approaching motorist had committed a crime. In each case, upon stopping the defendant, his lack of sobriety immediately was evident.

That the officer's intent in *Holmes* was to impart information, while the officer's intent in this case was to gather information does not compel a different conclusion:

---

[2] The officer in the instant case had a dual purpose in stopping people coming from Salishan that day: to inquire of potential witnesses and to catch the perpetrator. Because we hold that the officer was justified in stopping defendant as a potential witness, we do not address the issue of whether there was ''reasonable suspicion'' to stop him as a suspect. ORS 131.615. For a discussion of this issue generally, see 3 LaFave, Search and Seizure § § 9.3(d) and 9.5(a) (2d ed 1987).

"[L]aw enforcement officers remain free to approach persons on the street or in public places, seek their cooperation or assistance, request or impart information, or question them without being called upon to articulate a certain level of suspicion in justification if a particular encounter proves fruitful. A street or public place encounter does not amount to an Article I, section 9 'seizure' merely because the encounter may involve inconvenience or annoyance for the citizen and the other party to the encounter is known to be a law enforcement officer. Even physical contact does not transform the encounter into a 'seizure' if it is a normal means of attracting a person's attention (*e.g.*, policeman tapping citizen on the shoulder at the outset to get a citizen's attention)." *State v. Holmes, supra,* 311 Or at 410.

In this case, the officer's initial actions of flagging defendant down and directing him to stop were the only means available to get defendant's attention long enough to request information. These actions are analogous to "tapping [a] citizen on the shoulder at the outset to get a citizen's attention." This is not a significant restriction upon or interference with an individual's liberty or freedom of movement; nor would a reasonable individual believe that it was.

As in *Holmes,* we conclude that, although an individual might be annoyed or inconvenienced by such actions, the actions do not amount to an Article I, section 9, seizure. Defendant was not seized until after the officer noted sufficient indicia of inebriation to give him reasonable suspicion to believe that defendant was driving under the influence of intoxicants. At that point in the encounter, he was entitled to "stop" defendant. ORS 131.615.[3] Further investigation gave the officer probable cause to believe that defendant was driving under the influence of intoxicants and to arrest defendant.

---

[3] ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

A "stop" for purposes of ORS 131.615 is "a temporary restraint of a person's liberty by a peace officer lawfully present in any place." ORS 131.605(5).

*Federal Constitutional Analysis*

Like Article I, section 9, of the Oregon Constitution, the Fourth Amendment prohibits unreasonable searches and seizures by police officers. As with our analysis under Article I, section 9, our inquiry under the Fourth Amendment begins with a determination of whether the officer's initial stop of defendant was a seizure. In analyzing this issue, we recognize that "[l]ittle authority exists on the issue of what level of suspicion is necessary to stop and question potential witnesses about a crime." *Metcalf v. Long,* 615 F Supp 1108, 1114 n 5 (DC Del 1985). *See* 3 LaFave, Search and Seizure, § 9.2(b) (2d ed 1987) (discussing police interference with liberty of a potential witness). Because there is a dearth of specific, binding federal authority on this issue, it is useful to begin our analysis by looking to how other state courts have approached the problem.

In *Baxter v. State,* 274 Ark 539, 542, 626 SW 2d 935, *cert den* 457 US 1118 (1982), the defendant was stopped about five minutes after the officer heard a radio broadcast reporting a robbery. He was less than one-fourth mile from the scene of the robbery. The Supreme Court of Arkansas explained:

> "The crucial issue in this case is whether the initial stop of appellant was valid under state and federal law. If the stop is found to be valid, the logical progression of events which followed resulted in probable cause for the arrest. * * *

> "Cases regarding the police authority to make investigatory stops based upon reasonable suspicion that a vehicle or a person is involved in criminal activity are inapplicable to the stop at issue here. Also inapplicable to this stop are cases in which the police have reasonable cause to believe that the person stopped is a material witness.

> "*Involved here is the question of the extent of permissible interruption a citizen must bear to accommodate a law enforcement officer who is investigating a crime.* The practical necessities of law enforcement and the obvious fact that any person in society may approach any other person for purposes of requesting information make it clear the police have the authority to approach civilians." (Citations omitted.) (Emphasis added.)

That court concluded that stopping the defendant in order to gather information about the robbery did not violate the defendant's federal constitutional rights. *See also Keeton v. State,* 427 So2d 231 (Fla App 1983) (valid to detain as witness person found in park adjacent to scene of murder); *State v. Joao,* 56 Haw 216, 533 P2d 270 (1975) (constitutionally acceptable to stop person who police officer recognized as a party in traffic accident he was investigating); *State v. Shaffer,* 223 Kan 244, 574 P2d 205 (1977) (former employee of gas station where murder took place could be stopped for questioning, even though he was not a suspect).[4]

Although authority from other states is useful analytically, these cases do not reveal how the United States Supreme Court would rule on this issue. That Court has not addressed the circumstances under which a potential witness to a recently committed crime may be stopped without violating that individual's Fourth Amendment rights.[5] Accordingly, we continue our

---

[4] We note that the Model Code of Pre-Arraignment Procedure (1975) would provide police officers with the authority to question potential witnesses. Section 110.2(1) states that a

"law enforcement officer, lawfully present in any place, may, in the following circumstances, order a person to remain in the officer's presence near such place for such period as is reasonably necessary for the accomplishment of the purposes authorized in the Subsection, but in no case for more than twenty minutes:

"* * * * *

"(b) *Witnesses near scene of certain misdemeanors and felonies.*

"(i)  The officer has reasonable cause to believe that a misdemeanor or felony, involving danger of forcible injury to persons or of appropriation of or danger to property, has just been committed near the place where he finds such person, and

"(ii)  the officer has reasonable cause to believe that such person has knowledge of material aid in the investigation of such crime, and

"(iii)  such action is reasonably necessary to obtain or verify the identification of such person, or to obtain an account of such crime."

The Commentary explains the necessity for this type of activity in police investigations. "How can an officer, without a coercive stop, secure the voluntary cooperation of persons travelling in a car at night at sixty miles per hour?" Commentary at 271. (Footnote omitted.) Although gaining a potential witness's attention long enough to make inquiries is described as a "coercive stop" by the Commentary, it is not a sufficient infringement on a citizen's liberty to be called a "stop" for purposes of ORS 131.615, nor—as discussed in the text—is it a seizure for Oregon or federal constitutional purposes.

[5] In *United States v. Ward,* 488 F2d 162 (9th Cir 1973), the court held that it was an unreasonable seizure under the Fourth Amendment for FBI agents to use their siren to stop a driver whom they wanted to question about some fugitives. As

analysis on more general Fourth Amendment principles.

For Fourth Amendment purposes, the seizure of a person

> "includes not only full-fledged arrests, but also 'investigatory detentions' and any other 'detention of the [person] against his will.' All that is required, the Court declared in *Terry v. Ohio,* [392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968),] is that an 'officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' But as the Court later cautioned, 'a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " 1 LaFave, Search and Seizure 301, § 2.1(a) (2d ed 1987). (Footnotes omitted.)

As we recently noted in *State v. Holmes, supra,* 311 Or at 412, the United States Supreme Court has not been entirely consistent in its articulation of when the seizure of a person has taken place for Fourth Amendment purposes. In *United States v. Mendenhall,* 446 US 544, 554, 100 S Ct 1870, 64 L Ed 2d 497 (1980), the Court stated: "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Most courts, since the *Mendenhall* decision, have interpreted this statement to mean that a person's reasonable belief that the person was not "free to leave" was the determinative factor in the existence of a seizure under the Fourth Amendment. *See, e.g., State v. Horton,* 96 Or App 199, 202, 738 P2d 609 (1987) (a person is "restrained" and thereby seized when, in view of all the circumstances, a reasonable person would have believed that he or she was not free to leave).

More recently, however, the United States Supreme Court has put a new spin on the "free to leave" test. In *California v. Hodari D.,* 499 US \_\_\_, \_\_\_, 111 S Ct 1547,

---

Professor LaFave notes, although "some of the language [in] *Ward* might be taken to mean that the stopping of potential witnesses is never constitutionally permissible, it is submitted that the decision should not be read so broadly. The central point of *Ward* is that there were no exigent circumstances[.]" 3 LaFave, Search and Seizure 355, § 9.2(b) (2d ed 1987).

1551, 113 L Ed 2d 690 (1991), the Court explained that the "free to leave" test "says that a person has been seized 'only if,' not that he has been seized 'whenever'; it states a *necessary,* but not a *sufficient* condition for seizure—or, more precisely, for seizure effected through a 'show of authority.' " (Emphasis in original.) The *Hodari D.* court provided further guidance: "The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. * * * It does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure." ___ US at ___, 111 S Ct at 1550. (Footnote omitted.)

■ In our view, the current test for the seizure of a person under the Fourth Amendment is one that takes into account all the facts and circumstances of the encounter, including—but not limited to—whether a reasonable person in the defendant's position would believe that he was free to leave. The latter factor is not determinative. *State v. Holmes, supra,* 311 Or at 413.

■ The relevant circumstances in the encounter in this case include the following: The police officer was investigating the commission of a serious crime; the crime had taken place only 10 minutes earlier, so there was reason to believe that the perpetrator and witnesses would be near the scene; the police officer took the reasonable step of stationing himself on the only road leading away from the crime scene; the officer's primary intention was to find witnesses; the police vehicle's overhead lights were on for the purpose of attracting peoples' attention so that they would stop; defendant was commanded to stop only after he drove past the officer; as soon as the officer began to speak to defendant, defendant's intoxication became obvious.

Taking all these circumstances into account, we conclude that the officer did not seize defendant's person until after he reasonably suspected that defendant was driving under the influence of intoxicants. As with our analysis under Article I, section 9, we believe that the minimal intrusion of the encounter was not a constitutionally material interference with defendant's liberty. Regardless of whether a reasonable person would have felt free to leave when coming

upon the officer, the combination of factors set forth above reveals that the officer's attempt to gather information in a criminal investigation simply did not amount to a seizure of defendant's person for the purposes of the Fourth Amendment. *Cf. State v. Holmes, supra,* 311 Or at 414 ("The intrusion was an incidental effect of lawful police conduct, *i.e.,* an officer lawfully directing traffic at a scene of a motor vehicle accident."). We hold that the officer's stop of defendant did not violate defendant's rights under the Fourth Amendment.

## DISPOSITION

The officer did not violate defendant's state or federal constitutional rights. Therefore, the evidence that the trial court excluded should have been admitted. The decision of the Court of Appeals is affirmed; the decision of the district court is reversed; the case is remanded to the district court for further proceedings consistent with this opinion.