Argued and submitted November 6, 2006, affirmed February 7, 2007

# STATE OF OREGON,
*Respondent,*

*v.*

# BEVERLY JEAN McFARLAND,
*Appellant.*

## M1031608; A125975

152 P3d 967

Michael A. Breiling argued the cause and filed the brief for appellant.

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Brewer, C. J., *vice* Linder, J.

## WOLLHEIM, J.

Defendant appeals her convictions for driving under the influence of intoxicants (DUII), ORS 813.010, and two counts of reckless endangerment, ORS 163.195. Defendant assigns error to the trial court's denial of her motion to suppress. We affirm.

The facts are undisputed. Deputy Sheriff Kamasz was dispatched to a residence in a Deschutes County subdivision regarding a possible dispute. The specific address was unknown. While driving toward the area in uniform and in a marked car, the officer observed a red Jeep with a female driver approaching from the opposite direction. As the cars approached each other, the Jeep's driver, defendant, pointed to a house on the corner. Because the officer did not know the persons involved, or if any crime had been committed, he slowed down to ask through his open window if a dispute was occurring at the house. Also, the officer asked if defendant had called 9-1-1. Defendant said yes. The officer asked defendant to pull over to the side of the road and, as he turned his car around and got out of his vehicle, the Jeep continued to slowly drive forward. The officer yelled to defendant to stop and pull over again, which she did. As the officer approached defendant to speak to her, he smelled a strong alcoholic odor emanating from the vehicle. He also noticed that defendant's speech was slurred, her face was flushed and her eyes were watery and droopy. Defendant was arrested and charged with DUII.

Defendant filed a motion to suppress all oral and derivative evidence arising from the officer's second request to pull over on the ground that it constituted an unlawful stop. At the hearing, the officer testified that he had not suspected defendant of any crime when he yelled to her to pull over and stop. Based on the officer's testimony, the trial court concluded there was no "stop" when the officer yelled to defendant to pull over. The court stated

"Applying the *Holmes* test [*State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991)] to the facts of this case, I find that no reasonable person in [defendant's] case would have felt her liberties were being restricted. Unlike the cases

cited above[, *Holmes* and *State v. Gerrish*, 311 Or 506, 815 P2d 1244 (1991)], here it was [defendant] who invited the police to the area by calling to report a dispute. Since she slowed her vehicle to talk with the officer and answered his questions before he told her to pull over, there's a reasonable inference that she also expected to be contacted by the police about her call."

Accordingly, the trial court denied the motion to suppress.

■        On appeal, defendant argues that, once the officer yelled to defendant to stop, she was unlawfully seized under Article I, section 9, of the Oregon Constitution.[1] The state urges us to affirm the trial court's ruling because defendant initiated and requested contact with the police through the 9-1-1 call and that request prompted the officer to act in a lawful manner under Article I, section 9. We agree with the state that, under the totality of these circumstances, defendant was not seized within the meaning of Article I, section 9.[2]

■        When supported by "constitutionally sufficient evidence in the record[,]" the trial court's findings of fact are binding on us. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We then determine whether the trial court correctly applied legal principles to those facts. *Id.*

■■        An encounter between a law enforcement officer and a person is a seizure under Article I, section 9:

"(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such [a] belief is objectively reasonable in the circumstances. * * * [T]he encounter is a 'seizure' of a person only if the officer engages in conduct significantly

---

[1] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[2] Defendant has not argued, either on appeal or before the trial court, that the officer's conduct violated of the Fourth Amendment to the United States Constitution.

beyond that accepted in ordinary social intercourse. The pivotal factor is whether the officer, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner that would be perceived as a nonoffensive contact if it had occurred between two ordinary citizens."

*Holmes*, 311 Or at 409-10. Those limitations require a fact-specific inquiry into the totality of the circumstances of each particular case. An important consideration in differentiating between an encounter and a seizure is that

"law enforcement officers remain free to approach persons on the street or in public places, seek their cooperation or assistance, request or impart information, or question them without being called upon to articulate a certain level of suspicion in justification if a particular encounter proves fruitful."

*Holmes*, 311 Or at 410. Another crucial aspect of the analysis is "defendant's reasonable belief that he or she is not free to leave the scene" once the encounter starts and an investigation has begun. *State v. Campbell*, 207 Or App 585, 589, 142 P3d 517 (2006).

We agree with the parties that the Supreme Court's analyses in *Holmes* and *Gerrish* provide a framework for this case. In *Holmes*, a deputy sheriff rerouted traffic around a fatal motor vehicle accident scene and stopped each vehicle to explain the situation. 311 Or at 402-3. Instead of stopping where the officer stood, the defendant drove past the officer and stopped, then rolled forward a few feet and stopped a second time. At that time, the officer had no reason to suspect the defendant of any crime. When the officer explained the circumstances of the accident requiring the detour, he detected a strong odor of alcohol from the defendant's breath, and noticed that the defendant had bloodshot eyes and droopy eyelids, and that the defendant's face was flushed and his speech was slurred. The officer performed field sobriety tests resulting in the defendant's arrest for DUII. The *Holmes* court held that the officer's encounter with the defendant was not a seizure because: (1) being directed or stopped in traffic due to an accident is a common experience for a driver that does not create a psychologically intimidating environment; (2) there was no questioning of the defendant,

drawing of weapons, threats or requests for identification; and (3) the stop "was tailored in [a] direction and manner to be insignificantly intrusive." 311 Or at 411. A reasonable driver in the defendant's position "would *not* believe that the officer's conduct *significantly* restricted, interfered with, or otherwise deprived [a] defendant of defendant's liberty or freedom of movement." *Id*. (emphasis in original). Although the defendant may have been annoyed, under the circumstances, "some delay or interruption in his or her travel" was expected and "being advised of what was happening and that an alternate route was available" would even be appreciated. *Id*. Based on that reasoning, the Supreme Court concluded that the officer's order to the defendant to stop was not a seizure under Article I, section 9.

*Gerrish* presented similar facts that the Supreme Court used to further clarify the *Holmes* analysis. During a robbery investigation at a resort, officers detained motorists for "the express purpose of speaking with all persons leaving by vehicle to determine whether any of [those] persons witnessed the shooting/robbery, or to possibly find the perpetrator." 311 Or at 508. Initially, the defendant failed to stop and passed the officers positioned on the roadway. *Id*. at 509. On a second order to stop, an officer asked the defendant and his passenger if they knew anything about the robbery and observed that the defendant appeared intoxicated. The *Gerrish* court compared the facts of that case with the facts in *Holmes* and noted the following similarities: (1) The officers acted in accordance with statutory duties; (2) the officers used overhead lights or other similar means to signal the defendant to stop; (3) the defendant's compliance was not immediate; (4) the officers intended to stop the defendant only long enough to exchange information; (5) the officers had no reason to believe that the defendant had committed a crime; and (6) when the officers stopped the defendant, a lack of sobriety was immediately evident. The court concluded that the officer's stop of the defendant was not a seizure under Article I, section 9. 311 Or at 512-13.

Turning to this case, as the trial court noted, the facts presented are similar to *Holmes* and *Gerrish*, but with a stark distinction: Defendant requested police contact by calling 9-1-1 and then initiated the first contact with the officer

regarding that call by pointing to the house on the corner. Therefore, in viewing the totality of the circumstances, we similarly conclude that the officer did not significantly interfere with defendant's liberty interest. We reiterate that the crucial aspect of whether an encounter is a seizure is the defendant's reasonable perception of her inability to leave once the encounter starts and an investigation has begun. However, when defendant requested officer assistance by calling 9-1-1 and contacting the officer, she created an impression that she had information to disclose to him. Those actions negate her argument of a reasonable belief of an unlawful seizure. When defendant made her request and initial contact, because her compliance was not immediate and the officer needed information, he then attempted to stop her in a way that was "tailored in direction and manner to be insignificantly intrusive." *Holmes*, 311 Or at 411. The officer noted signs of defendant's possible intoxication only after directly speaking to her. Although defendant may have been annoyed, a reasonable individual would expect, or even appreciate, some delay for the purpose of informing the officer about the dispute that she reported. We fail to see how defendant may first report a potential emergency, then contact the officer, creating an impression that she has information regarding the dispute, and then, when the officer tries to elicit the information to provide assistance, assert that the officer's actions create a reasonable belief of a constitutional violation. Such an assertion is not reasonable.

In summary, the trial court correctly concluded that the officer's request that defendant stop did not significantly interfere with defendant's liberty. Because the officer did not seize defendant under Article I, section 9, the trial court correctly denied defendant's motion to suppress.

Affirmed.