Argued and submitted March 14, 2019, reversed and remanded
February 20, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DYLAN JEFFREY MIDDLETON,
*Defendant-Appellant.*

Clatsop County Circuit Court
16CR21821; A166299

459 P3d 918

While on patrol late at night, a police officer came across a truck in a ditch, which he suspected was there as the result of someone driving recklessly or under the influence of intoxicants. Shortly after he arrived at the scene, the officer saw defendant and another man drive past without looking at the accident scene or acknowledging the officer. The officer immediately became suspicious, followed the two men, and pulled them over. He had not seen the driver commit any traffic violations but, instead, pulled them over due to their suspicious conduct at the accident scene. As soon as the officer began talking to him, defendant admitted that the truck in the ditch belonged to him. Defendant was subsequently charged and convicted of driving under the influence of intoxicants. On appeal, defendant argues that the trial court erred in denying his pretrial motion to suppress evidence, because he was stopped unlawfully in violation of Article I, section 9, of the Oregon Constitution. The state contends that the trial court did not err in denying the motion to suppress, because defendant was not seized, or, if he was, the officer reasonably believed that defendant was a material witness to a crime or reasonably suspected that defendant had committed a crime. *Held*: The trial court erred in denying defendant's motion to suppress. Under the circumstances, defendant was seized for purposes of Article I, section 9; the material-witness exception to the warrant requirement did not justify the seizure; and the officer lacked reasonable suspicion that defendant had committed a crime.

Reversed and remanded.

Cindee S. Matyas, Judge.

Kevin T. Lafky argued the cause for appellant. Also on the briefs was Leslie D. Howell.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.*

AOYAGI, J.

Reversed and remanded.

_____

* Egan, C. J., *vice* Hadlock, J. pro tempore.

**AOYAGI, J.**

Defendant was stopped by a police officer after the officer saw defendant and his roommate drive past a truck in a ditch. Defendant admitted to the officer that the truck in the ditch was his. He was subsequently convicted of driving under the influence of intoxicants (DUII), ORS 813.010. On appeal, defendant argues that the trial court erred in denying his motion to suppress evidence obtained in violation of Article I, section 9, of the Oregon Constitution.[1] The state responds that the trial court correctly denied the motion because defendant was not seized, or, if he was, the seizure was lawful because the police reasonably believed that defendant was a material witness to a crime or reasonably suspected that defendant had committed a crime. We conclude that the trial court erred in denying defendant's motion and, accordingly, reverse and remand.

## I.  FACTS

We review the denial of a motion to suppress for legal error. *State v. Miller*, 267 Or App 382, 383, 340 P3d 740 (2014). In doing so, we rely on the trial court's findings of historical fact as long as there is constitutionally sufficient evidence to support them. *State v. Evans*, 284 Or App 806, 811, 397 P3d 42 (2017). We state the facts in accordance with that standard of review.

At 2:55 a.m. on a February night, Trooper Kolacz of the Oregon State Police was patrolling Highway 101 when he came across a single-vehicle accident. Kolacz saw a truck angled nose-down in a swampy ditch on the west side of Highway 101, near the intersection of Highlands Lane, a side street that led into a residential area. Given the time of night, the lack of obstacles or animals in the roadway, and it being a single-vehicle accident, Kolacz suspected DUII or reckless driving. A car was parked nearby, with its hazard lights on, and two men were standing by the car. Kolacz turned on his overhead lights and pulled over.

Kolacz got out of his patrol car and called out to the two men. As he walked toward them, they exchanged a few

---

[1] Defendant also makes an argument under the Fourth Amendment to the United States Constitution, but we do not reach that issue given our disposition.

words, which led Kolacz to believe that they were not involved in the accident.[2] Just then, Kolacz saw a truck approaching from about 200 to 500 feet away. It came from a side street, turned onto Highlands Lane, and then turned onto Highway 101. As the truck reached the intersection with Highway 101, Kolacz made two "wave-type" hand gestures, which the trial court described as "not dramatic." Both the driver and the passenger kept their faces forward and did not look at the accident scene or acknowledge Kolacz. The trial court appears to have found that, because they "had their heads facing forward and were oblivious to or intentionally ignoring the scene," they did not notice Kolacz's hand gestures.[3]

Kolacz immediately formed a subjective belief that the truck's occupants were "involved" in some way with the accident. He based that belief on the scarcity of traffic in the area at that time of night and the fact that the truck's occupants did not look at the accident scene or acknowledge him as they passed by. In Kolacz's experience, at accident scenes, "as much as you want [passersby] to kind of continue to go through, everybody wants to kind of looky-look and always check out the crash," so it was very unusual for the truck's occupants not to look at the scene. Instead, they "kind of dead-stared ahead," while the driver had both hands "gripped on the wheel kind of firmly."

Kolacz quickly got into his patrol car and pursued the truck with his overhead lights on. The driver of the truck did not commit any traffic violations. When Kolacz caught up with the truck, it pulled over, and Kolacz got out of his patrol car. Training his flashlight through the back window, Kolacz approached the passenger side, where defendant was sitting, and stood outside the passenger door. Kolacz asked,

---

[2] Specifically, Kolacz "kind of motioned towards the guys, just to acknowledge them," and "said 'hello' or something of the sort." One of the men "acknowledged back and said that he was okay, that he was doing all right." That statement, coupled with the fact that the men did not look like they had been in a recent accident, led Kolacz to believe that they were passersby and had not been involved in the accident.

[3] It is important to note that the state is not arguing—nor did the trial court rule—that Kolacz's hand gestures constituted an actual signal to the truck's driver to stop the truck. *See* ORS 811.540(1)(b) (crime of eluding a police officer includes failing to stop a vehicle when a uniformed police officer signals to do so, including a "signal by hand").

"Hey how's it goin'?" and then said something else that is inaudible on the dash-cam video recording and about which no one testified. Defendant promptly stated that the truck in the ditch was his. Both defendant and the driver—who identified himself as defendant's roommate—denied having seen Kolacz make a hand gesture near the accident scene. Kolacz observed signs of possible intoxication on defendant's part, particularly bloodshot eyes and the smell of alcohol. He eventually arrested defendant, who was later charged with one count of DUII.

Before trial, defendant moved to suppress the evidence obtained after Kolacz pulled over the truck. He argued that Kolacz had stopped and seized him without reasonable suspicion that he had committed a crime, in violation of Article I, section 9. The state opposed the motion on various grounds.

The trial court denied the motion to suppress. Relying on *State v. Holmes*, 311 Or 400, 813 P2d 28 (1991), *abrogated in part on other grounds by State v. Ashbaugh*, 349 Or 297, 316, 244 P3d 360 (2010), and *State v. Gerrish*, 311 Or 506, 815 P2d 1244 (1991), the court concluded that the encounter was not a seizure. It reasoned that, "[g]iven the time of night and the rarity of traffic, any vehicle driving in the vicinity may have seen or heard something and could potentially be a witness." As such, the court considered it "entirely reasonable" for Kolacz to want to talk to the truck's occupants when the truck approached the intersection. However, the truck's occupants did not look at him, and there was "no time" to "hail" them or "otherwise command them to stop," so Kolacz did "the only safe and reasonable thing," which was to follow them and use his lights to "'flag' them down and get their attention." Under the circumstances, the court concluded, "defendant's freedom was not significantly restricted," and he was not seized. Alternatively, the court ruled that, if defendant was seized, the seizure was lawful because Kolacz had reasonable suspicion that defendant had committed the crime of DUII or reckless driving.

Defendant entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress, and was thereafter convicted of DUII.

## II. ANALYSIS

On appeal of the judgment of conviction, defendant assigns error to the denial of his motion to suppress, reiterating the arguments that he made below. The state responds in three ways. Primarily, the state argues that the trial court correctly concluded that defendant was not seized under *Holmes* and *Gerrish*. Secondarily, the state argues that, if defendant was seized, it was a lawful stop because defendant was a "material witness" under *State v. Fair*, 353 Or 588, 609, 302 P3d 417 (2013). Lastly, the state cursorily defends the trial court's ruling that Kolacz reasonably suspected that defendant had committed a crime. We address each of the three arguments in turn.

A. *Was it a seizure?*

The first question is whether Kolacz seized defendant. "We long have recognized that, out of the broad range of potential encounters between police and citizens, only some implicate the prohibition in Article I, section 9, against unreasonable 'seizures.'" *Ashbaugh*, 349 Or at 308.

"Analytically, police-citizen encounters typically fall into one of three categories that correlate the degree of intrusiveness on a citizen's liberty with the degree of justification required for the intrusion." *Fair*, 353 Or at 593. Those categories are: (1) mere conversations, (2) stops, and (3) arrests. *Ashbaugh*, 349 Or at 308-09. A "mere conversation" is a "non-coercive encounter" that does not involve "any" restraint on the person's liberty or freedom of movement. *State v. Arreola-Botello*, 365 Or 695, 701, 451 P3d 939 (2019); *see also Ashbaugh*, 349 Or at 307, 317 (holding that citizen was engaged in "mere conversation" with police officer once she "was free to leave" and when the atmosphere would not convey to a citizen "that she was not free to go"). "Stops" are temporary detentions for investigatory purposes; they impose a "temporary restraint on a person's liberty," constitute a seizure, and generally require reasonable suspicion of a crime or probable cause that a driver has committed a traffic violation. *Ashbaugh*, 349 Or at 308-09; *State v. Rodgers/Kirkeby*, 347 Or 610, 623, 227 P3d 695 (2010); *see also State v. Brown*, 293 Or App 772, 779, 427 P3d 221 (2018)

(defendant was stopped because the "overall context of the contact" conveyed that she was "not free to leave"). "Arrests" involve "restraints on an individual's liberty that are steps toward charging individuals with a crime," constitute a seizure, and require probable cause. *Ashbaugh*, 349 Or at 309.

Under current law, the test for whether an encounter is a "seizure" is whether the officer "intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement," or whether "a reasonable person under the totality of the circumstances would believe that [that] has occurred." *Fair*, 353 Or at 594. "In applying that standard, we look to whether the encounter entailed a significant restraint on defendant's liberty imposed either by physical force or through some show of authority." *Id*. (internal quotation marks and brackets omitted).

In this case, it is undisputed that Kolacz acted in a manner that, in most circumstances, would constitute a seizure, specifically a "stop." Driving a marked patrol car with its overhead lights on, Kolacz pursued the truck in which defendant was riding, until the driver pulled over as he was legally required to do. *See Rodgers/Kirkeby*, 347 Or at 622-23 (citing several criminal statutes that apply when a driver fails to stop when directed to do so by a law enforcement officer). If Kolacz had observed someone commit a traffic violation and engaged in the same conduct to investigate the traffic violation, there would be no question that Kolacz had "stopped" the person. *See, e.g., State v. Watson*, 353 Or 768, 774, 305 P3d 94 (2013). Nonetheless, the state argues that, under the particular circumstances, Kolacz did not "stop" the truck's occupants.[4] Rather, the state argues—and the trial court ruled—that Kolacz's encounter with defendant was akin to the checkpoint encounters in *Holmes* and *Gerrish* that the Supreme Court held not to be seizures.

---

[4] It is uncontested that Kolacz wanted to talk to both of the truck's occupants and that there is no distinction between them for purposes of the constitutional analysis, as there might be if it had been a typical traffic stop. *See State v. Kamph*, 297 Or App 687, 691-92, 442 P3d 1129 (2019) (explaining that a passenger in a stopped vehicle is not automatically seized under Article I, section 9, but that, under the Fourth Amendment, an officer effectively seizes everyone in the vehicle).

In *Holmes*, a traffic accident had completely blocked passage over a bridge, and an officer was stopping all vehicles approaching the bridge to explain the situation and inform drivers of the detour. 311 Or at 402. He laid out a series of flares on the roadway, positioned his patrol car behind the flares with overhead lights flashing, and stood in the center of the lane. *Id.* The officer stopped "about a dozen" vehicles before stopping the vehicle driven by the defendant. *Id.* at 403. As a result of the ensuing interaction, the defendant was arrested and charged with DUII. *Id.* Similarly, in *Gerrish*, an officer reported to the scene of an armed robbery, a seaside resort, and set up a checkpoint at the only exit from the resort. 311 Or at 508. He planned to stop each vehicle leaving the resort to identify potential witnesses, as well as potentially prevent an armed robber from leaving the resort. *Id.* at 508-09. The first driver that the officer stopped showed signs of intoxication and was eventually arrested and charged with DUII. *Id.* at 509.

In both cases, the Supreme Court held that the encounter was not a seizure. In *Holmes*, the court noted that it is a common experience to see an officer directing or stopping traffic because of an accident. 311 Or at 411. In *Gerrish*, the court analogized the officer's conduct to "tapping a citizen on the shoulder at the outset to get a citizen's attention." 311 Or at 512-13 (brackets omitted). As later described in *Fair*, "[t]ogether, *Holmes* and *Gerrish* stand for the limited proposition that a law enforcement officer constitutionally may halt and briefly detain a person passing through a public area as a means to engage the citizen long enough to impart information or seek the citizen's cooperation or assistance." 353 Or at 598. Notably, as *Fair* clarified, *Holmes* and *Gerrish* do *not* stand "for the broad proposition that the protections of Article I, section 9, do not extend to persons that police stop and detain as potential witnesses." *Id.* at 598-99.

In discussing *Holmes* and *Gerrish*, it is important to recognize that the "three categories" of police encounters—mere conversations, stops, and arrests—are "guidelines only" and "represent a simplification of what actually is a continuum of intrusiveness." *Gerrish*, 311 Or at 510. That is significant because the police-citizen encounters in *Holmes* and *Gerrish* appear to fall somewhere between

"mere conversations" and "stops." In a true "mere conversation," a citizen would be free to decline conversation or walk away from the officer, whereas it is unlawful for a driver not to stop when a uniformed police officer directs him to stop. *Rodgers/Kirkeby*, 347 Or at 622-23. Yet, even though the encounters in *Holmes* and *Gerrish* were more than mere conversations, they did not rise to the level of seizures, because they involved both a relatively minimal intrusion and a relatively compelling justification for that intrusion. In short, the officers' conduct was "not a socially intrusive exercise of police authority *in those particular settings and circumstances.*" *Fair*, 353 Or at 598 (discussing *Holmes* and *Gerrish*) (emphasis added).[5]

Turning to the facts of this case, whether a given encounter between an officer and a citizen constitutes a seizure is always a "fact-intensive and circumstance-specific" inquiry. *Id*. at 594. Here, we disagree with the state (and the trial court) that the defendant's encounter with Kolacz was akin to those in *Holmes* and *Gerrish*.

As a preliminary matter, there was no checkpoint in this case. The state argues that, although there was no "formal" checkpoint, there was a "de facto" checkpoint and that defendant's vehicle just happened to be the first one stopped. But that assertion is belied by the record. There

---

[5] The Supreme Court has not been entirely consistent in describing where *Holmes* and *Gerrish* fall on the "continuum" of police-citizen encounters. *Holmes* and *Gerrish* themselves do not expressly address that point, beyond concluding that the encounters landed on the nonseizure side of the line. *See Holmes*, 311 Or at 411-12; *Gerrish*, 311 Or at 512-13. In later cases, the court has sometimes seemed to acknowledge that encounters like those in *Holmes* and *Gerrish* are more than "mere conversations," albeit less than "stops." *E.g.*, *Rodgers/Kirkeby*, 347 Or at 623 (recognizing that drivers are required to stop for police officers and that, as a result, "a traffic stop by its nature is not an ordinary police-citizen 'encounter,' as the court described such encounters in *Holmes*"). At other times, however, the court has used the term "mere conversation" (or "mere encounter") as shorthand for any encounter that is not a seizure. *E.g.*, *Fair*, 353 Or at 595 ("[T]he line between a 'mere encounter' and something that rises to the level of a 'seizure' does not lend itself to easy demarcation."). We use "mere conversation" in the more precise sense in this opinion. That is, we use "mere conversation" to refer to a noncoercive encounter that a citizen is free to avoid or leave, *see Arreola-Botello*, 365 Or at 701 (a "mere conversation" is a "non-coercive encounter" and does not involve "any" restraint on the person's liberty or freedom of movement), while recognizing that an encounter that is not a "mere conversation" may nonetheless fall short of a seizure, depending on the circumstances, as was the case in *Holmes* and *Gerrish*.

is no evidence that Kolacz was setting up a checkpoint or that he intended to stop every passing vehicle to identify witnesses. Although the principles underlying *Holmes* and *Gerrish* are not necessarily limited to cases involving checkpoints, the fact that both cases involved checkpoints is relevant. When a citizen sees a police checkpoint on a public roadway, the very fact that it is a checkpoint puts the citizen on notice that *all* vehicles are being stopped—rather than the individual citizen being targeted by police—and that the interaction is likely to be brief. The very nature of a checkpoint therefore, at least to some degree, makes the encounter less intrusive. *See Holmes*, 311 Or at 411 (noting that is a common experience to see an officer directing or stopping traffic because of an accident).

A more fundamental problem with the state's position, however, is that it incorrectly views *Gerrish* as establishing that any "checkpoint" whose objective is the discovery of potential witnesses is not subject to the constraints of Article I, section 9. But, as the Supreme Court has made clear, police authority to use checkpoints is decidedly limited. In *Holmes*, for example, the police set up a checkpoint to address an immediate public safety issue by alerting drivers to an accident and informing them how to safely detour around it. And, in *Gerrish*, the police had just received a report of an armed robbery, the robbery had occurred at a resort with a single vehicular exit, and the people being stopped at the exit had almost certainly been at the resort when the robbery occurred. There was also an armed robber on the loose. Thus, rather than suggesting that the police can, without effecting a seizure, set up a checkpoint or otherwise stop citizens' vehicles whenever they want to communicate with the occupants, those cases illustrate specific situations in which the significant "degree of justification" for a brief detention outweighed the relatively minor "degree of intrusiveness on [the] citizen's liberty" to the point that no seizure occurred. *Fair*, 353 Or at 593. By contrast, the Supreme Court has held that DUII checkpoints, "conducted to discover and arrest persons committing the crime of [DUII] and to gather evidence for use in the[ir] criminal prosecutions," violate Article I, section 9. *State v. Boyanovsky*, 304 Or 131, 133-34, 743 P2d 711 (1987).

In this case, the accident at issue occurred on an open public highway, and Kolacz had no information as to when it had occurred. It might or might not have involved a crime. And the likelihood of any individual passerby having witnessed the accident was very low. In those circumstances, it is at least debatable whether Kolacz was free to stop and temporarily detain everyone who passed by the accident scene in a moving vehicle, on the off chance that they had witnessed the accident, without implicating Article I, section 9.

But even assuming that Kolacz could have stopped and temporarily detained any and all passersby simply to ask if they had witnessed the accident, that is not what happened here. At the accident scene, Kolacz made a hand gesture toward the truck in which defendant was riding, which the truck's occupants did not see. If the driver had seen the gesture, interpreted it as a greeting, and stopped voluntarily, it would be easy to say that the gesture was equivalent to "tapping a citizen on the shoulder" to get his attention and did not effectuate a seizure. *Gerrish*, 311 Or at 512-13. Even if the driver had seen the gesture, interpreted it as a direction to stop, and stopped for that reason, the state would have at least a plausible argument that the intrusion was minimal enough to be justified by the circumstances without giving rise to a seizure. *See Fair*, 353 Or at 593 (the various categories of police-citizen encounters "correlate the degree of intrusiveness on a citizen's liberty with the degree of justification required for the intrusion").

The truck did not stop, however, and the state implicitly recognizes that it was not required to stop. It turned onto Highway 101 and continued down the road. At that point, Kolacz became suspicious that the truck's occupants were personally "involved" with the accident in some way, and he jumped into his patrol car, pursued the truck with lights flashing, and pulled it over. Thus, notwithstanding any hypothetical voluntary or minimally intrusive encounter that could have occurred at the accident scene on different facts, the actual encounter in this case was the result of much more intrusive conduct, akin to a traditional "stop." It also was based on individualized suspicion, which further distinguishes this case from *Holmes* and *Gerrish*.

*Compare Holmes*, 311 Or at 411 (checkpoint was solely to divert traffic), *and Gerrish*, 311 Or at 512-13 (officer only intended to exchange information and did not have any reason to believe that the defendant had committed a crime), *with Boyanovsky*, 304 Or at 134 (a search or seizure based on "individualized suspicion of wrongdoing" requires a warrant or exception to the warrant requirement).

In sum, when the truck in which defendant was riding passed the accident scene, Kolacz may have hoped that he could have a mere conversation with the truck's occupants. However, that did not happen, at which point Kolacz became suspicious and proceeded to engage in a significant show of authority. The ensuing encounter was not a "mere conversation," because defendant was not free to leave, nor would any reasonable person in his position believe that he was. *See Ashbaugh*, 349 Or at 307-08. Nor was it akin to the encounters in *Holmes* and *Gerrish*. First, it was significantly more intrusive—Kolacz pursued the truck in a marked patrol car with its overhead lights on and forced it to pull over. Second, the justification for the stop was entirely different than that in *Holmes* and *Gerrish*—being based on individualized suspicion that the truck's occupants were involved in a crime. In these circumstances, defendant was seized.

B.   *Did the material-witness exception apply?*

Having determined that defendant was seized, the next question is whether the seizure was lawful. Relying on *Fair*, the state argues that Kolacz could temporarily detain defendant without a warrant, because he reasonably believed that defendant was a "material witness" to the crime of DUII or reckless driving.[6]

In *Fair*, officers responded to a suspected domestic violence incident, after receiving an incomplete 9-1-1 call in which a woman was heard saying "stop it" and "get off me"

---

[6] We agree with defendant that the trial court did not rely on the material-witness exception to the warrant requirement when it denied his motion to suppress. As such, we consider the issue as an alternative basis to affirm, as the state requests. It is appropriate that we do so because the prerequisites for such consideration are met, *see Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), but, ultimately, we reject the state's argument on the merits, as we will explain.

while a man yelled in the background. 353 Or at 590. When officers arrived at the house, the defendant and her husband answered the door together; she had a large swollen area over one eye, while he showed no signs of injury. *Id.* at 591. The officers questioned the defendant on the porch, while her husband yelled at her from the yard not to say anything. *Id.* The officers asked the defendant for identification and questioned her about the aborted 9-1-1 call and the dispute with her husband. *Id.* During the questioning, a syringe cap fell out of the defendant's pant leg, which ultimately led to her being arrested and charged for drug possession. *Id.* at 592.

On review of the denial of her motion to suppress, the Supreme Court held that the defendant was seized but that the seizure was lawful. *Id.* at 590. The court explained that, "in appropriate circumstances, it is permissible under Article I, section 9, for officers to stop and detain someone for on-the-scene questioning whom they reasonably suspect can provide material information about a crime's commission." *Id.* at 608. Such temporary on-the-scene detention of "a likely material witness" does not violate Article I, section 9, as long as three conditions are met:

> "(1) the officer reasonably believes that an offense involving danger of forcible injury to a person recently has been committed nearby; (2) the officer reasonably believes that the person has knowledge that may aid in the investigation of the suspected crime; and (3) the detention is reasonably necessary to obtain or verify the identity of the person, or to obtain an account of the crime."

*Id.* at 609. The court expressly left open which crimes qualify as "offense[s] involving danger of forcible injury to a person." *Id.* at 609 n 11.

Even assuming that Kolacz reasonably believed that an offense involving "danger of forcible injury to a person" had been committed "recently" nearby—as the state argues and defendant contests—the state's material-witness argument fails. In *Fair*, given the 9-1-1 call and the officers' observations at the house, the officers had "an objectively reasonable basis to believe that [the] defendant was a victim of a domestic assault that had just occurred at the home and likely possessed information material to that crime." *Id.* at

611. In other words, it was likely that the defendant personally was a material witness to a crime. By contrast, Kolacz had no objectively reasonable basis to believe that *defendant* was a material witness to a crime. The fact that *anyone* driving in the area might theoretically have been in the area earlier and witnessed the suspected crime is not sufficiently specific or individualized to trigger the material-witness exception. We therefore reject the state's argument that the stop was lawful due to the material-witness exception to the warrant requirement.

C.   *Did the officer have reasonable suspicion that defendant had committed a crime?*

Finally, the trial court ruled that any stop of defendant was lawful because Kolacz reasonably suspected that defendant had committed the crime of DUII or reckless driving. Reasonable suspicion is a lesser standard than probable cause. *State v. Holdorf*, 355 Or 812, 823, 333 P3d 982 (2014); *see also State v. Walker*, 277 Or App 397, 401, 372 P3d 540, *rev den*, 360 Or 423 (2016) ("[A]n officer may have 'reasonable suspicion' sufficient to justify an investigatory stop of a person even if the officer does not have sufficient reason to believe that it is probable that the person has committed *** a crime." (Emphasis omitted.)).

In determining whether an officer had reasonable suspicion for a stop, a court must first look to the officer's actual belief, and then evaluate whether that belief was objectively reasonable under the totality of the circumstances. *State v. Belt*, 325 Or 6, 13-14, 932 P2d 1177 (1997). The officer's subjective belief must be objectively reasonable "as to a specific defendant and crime." *Id.* at 14. It also must be based on "specific and articulable facts" identified by the officer. *Holdorf*, 355 Or at 823; *see also State v. Maciel-Figueroa*, 361 Or 163, 183, 389 P3d 1121 (2017) (stating that we consider "the specific facts, articulated by the officer, that led him or her to believe that the defendant may have committed a crime").[7] An officer may not "interfere with [a]

_____

[7] We therefore limit our analysis to the facts perceived by Kolacz and, in particular, do not consider the trial court's finding that "the audio portion of [Kolacz's dash camera video] suggests that there was rapid acceleration of the truck as it pulled out, despite the lack of any traffic whatsoever." There was no

person's liberty based only on intuition or a hunch." *Walker*, 277 Or App at 401. "To prevent officers from interfering with individuals' liberty based on nothing more than the officers' instincts or gut reactions to situations, courts require officers to be able to articulate the 'observable facts' that form the basis for their suspicion of criminal activity." *Id.* (quoting *Holdorf*, 355 Or at 823).

In this case, Kolacz testified to a subjective belief that the occupants of the passing truck were "involved" in some way with the accident. That testimony arguably falls short of the necessary subjective belief, *i.e.*, that *defendant* had *committed a crime*. However, even if that testimony is sufficient to establish that Kolacz subjectively believed that defendant was the driver of the truck in the ditch and had committed DUII or reckless driving, such belief was not objectively reasonable under the circumstances. The specific and articulable facts on which Kolacz based his suspicion that defendant was the driver were (1) the scarcity of traffic in the area at that time of night, (2) the fact that the truck's occupants did not look at the accident scene, which Kolacz considered very unusual, because passersby usually look at accident scenes, and (3) the fact that the truck's occupants did not "acknowledge" Kolacz as they passed the accident scene but rather "kind of dead-stared ahead," while the driver "gripped on the wheel kind of firmly."

Such facts were insufficient to give rise to reasonable suspicion that defendant had committed DUII or reckless driving. Kolacz's hunch that the truck's occupants were somehow "involved" in the accident may have proved correct, at least as to defendant, but we cannot evaluate reasonable suspicion with the benefit of hindsight. It is not objectively reasonable to suspect anyone who passes by a traffic accident on a public road of being the person who caused it, even if the hour is late or traffic is light, especially when it is unknown when the accident occurred. There was no more reason to suspect that defendant was the driver of the truck in the ditch than one of the two men stopped at the accident scene or the next person who would have passed by.

---

testimony on that issue, as the trial court expressly noted, and Kolacz did not purport to perceive any such rapid acceleration.

That leaves only the fact that defendant and his roommate looked straight ahead while driving past the accident scene and did not look at the accident or acknowledge Kolacz. That is insufficient to give rise to reasonable suspicion. Engaging in ambiguous conduct and appearing to want to avoid police contact does not give rise to reasonable suspicion that a person has committed a crime. *State v. Martin*, 260 Or App 461, 472-73, 317 P3d 408 (2014) ("Evidence that a person is in a high-crime area, is engaged in ambiguous conduct, and appears to want to avoid police observation does not give rise to reasonable suspicion to stop the person.").

## III.   CONCLUSION

In sum, defendant was seized for purposes of Article I, section 9, when Kolacz pursued the truck in which he was riding and pulled it over. The seizure was not justified by the material-witness exception to the warrant requirement, nor was it justified by reasonable suspicion that defendant had committed a crime. The trial court therefore erred in denying defendant's motion to suppress. Accordingly, we reverse and remand.

Reversed and remanded.