***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted February 11, 2022, affirmed February 23, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSE BENJAMIN MEJIA,
*Defendant-Appellant.*

Marion County Circuit Court
15CR35782, 17CR47762;
A173054 (Control), A173055

Sean E. Armstrong, Judge.

Morgen E. Daniels, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Egan, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.*

KAMINS, J.

Affirmed.

_____

* Lagesen, C. J., *vice* James, J. pro tempore.

**KAMINS, J.**

In this consolidated appeal, defendant challenges his judgment of conviction for delivery of methamphetamine within 1,000 feet of a school and endangering the welfare of a minor.[1] Defendant originally filed a section A brief pursuant to *State v. Balfour*, 311 Or 434, 814 P2d 1069 (1991) and ORAP 5.90. Because this court had identified an arguably meritorious issue regarding the denial of defendant's motions to suppress, the Appellate Commissioner requested supplemental briefing and we held oral argument. In that briefing defendant raises two assignments of error, contending that the trial court erred in denying his motions to suppress evidence obtained from a warrantless visit to and subsequent warranted search of his home and garage. We affirm.

We review the trial court's denial of defendant's motions to suppress for legal error. *State v. Middleton*, 302 Or App 339, 341, 459 P3d 918 (2020). "In doing so, we rely on the trial court's findings of historical fact as long as there is constitutionally sufficient evidence to support them." *Id*. Further, "we must assume that the trial court decided historical facts necessary to its legal conclusions in a manner consistent with those conclusions." *State v. Reyes-Herrera*, 369 Or 54, 61, 500 P3d 1 (2021).

Before trial, defendant filed motions to suppress, challenging the evidence observed during a "knock-and-talk" and the fruits of the warranted search. He argued that the police had seized him when they questioned him without reasonable suspicion before gaining his consent to enter his home and then exceeded the scope of his consent once inside the house. He also argued that evidence from the warranted search must be suppressed, because the warrant relied on information obtained from the unconstitutional seizure.

The first question before us is whether the "knock-and-talk" amounted to a seizure in violation of defendant's rights under Article I, section 9, of the Oregon Constitution. To answer that question, we must examine the totality of

---

[1] Defendant only challenges the judgment of conviction in Case No. 15CR35782 and does not challenge the judgment in Case No. 17CR47762.

the circumstances, to determine whether "reasonable people in defendant's position would have believed that their liberty was restricted." *Reyes-Herrera*, 369 Or at 68. "A verbal encounter rises to the level of a seizure 'when the content of the questions, the manner of asking them, or other actions that the police take (along with the circumstances in which they take them) would convey to a reasonable person that the police are exercising their authority to coercively detain the citizen.'" *Id*. at 58 (quoting *State v. Backstrand*, 354 Or 392, 412, 313 P3d 1084 (2013)). For such an encounter to constitute a seizure, "something more" than seeking an individual's cooperation is required. *Id*.

The circumstances here lacked the "something more" that would convert the "knock-and-talk" into a seizure. Police received a call about a house and went to the house, knocked on the front door, informed the resident about the complaint, and sought his cooperation in investigating further. *See State v. Magana/Rivera*, 257 Or App 251, 255, 304 P3d 780 (2013), *vac'd and rem'd*, 354 Or 837, 325 P3d 738 (2014) (describing a typical "knock-and-talk" as "a conversation with the [residence's] occupant during which the officers will remain on the threshold unless they receive permission to enter the [home]"). The officers did not accuse defendant of a crime, they did not suggest that defendant had to stay and answer questions, and defendant allowed the detectives in. *Cf. State v. Magana/Rivera*, 265 Or App 416, 422-24, 335 P3d 318 (2014) ("knock-and-talk" created a coercive atmosphere when police officers did not explain the reason for their visit, made repeated efforts to talk to the defendant after he slammed the door, ordered the defendant to submit to a patdown when he did open the door, immediately asked for consent to search the residence with a narcotics dog, and the consent was obtained while defendant was in the presence of five officers wearing ballistic vests).

Defendant's reliance on *Reyes-Herrera* is misplaced. In *Reyes-Herrera*, the investigating officer witnessed a potential drug transaction between the defendant and another man on a public street. 369 Or at 56. The officer stopped his patrol car near where the defendant was walking, approached the defendant, told him that he witnessed the transaction and, "[a]cting on no more than a hunch," asked

whether the defendant had bought drugs from the other man and for permission to search him. *Id*. at 66-67. The Supreme Court said that those circumstances implied that the "defendant could be in trouble and must remain where he was." *Id*. at 66. By contrast, defendant here was at his house when officers knocked on the door and informed him that they had received a call about the house—not necessarily about the person who answered the door—and defendant agreed to let them in. Those circumstances would not have communicated to a reasonable person that their liberty was significantly restricted.

As to defendant's argument that the search exceeded the scope of his consent, we are bound by the trial court's implicit factual findings. Defendant asserted that the officers told him that they had received information about marijuana plants in the backyard, so he gave them permission to look there. Defendant testified that the officers entered the garage without his consent and over his protestations that they had only sought to search the backyard. By contrast, the police detective testified that he informed defendant of the report about drugs being sold from the garage and specifically asked for and obtained defendant's consent to search the garage. In denying the motion to suppress, the trial court necessarily rejected defendant's version of events and accepted the state's; that implicit factual finding is binding on us.[2] Because there was no violation relating to the initial home visit, there was no violation relating to the warrant obtained based on information derived from that visit.

Affirmed.

---

[2] We are also bound by the trial court's implicit factual finding that defendant understood English well enough to voluntarily give consent to the search of the residence, which was a necessary finding and supported by the record.